O

1
2
3
4
5
6
7
8
9       UNITED STATES DISTRICT COURT

9       CENTRAL DISTRICT OF CALIFORNIA

10
11  NAAJI KINGSTRO,                    )   Case No. CV 12-4673-SP
                                       )
               Plaintiff,              )   **MEMORANDUM OPINION AND**
12                                     )   **ORDER GRANTING**
        v.                             )   **DEFENDANTS' MOTION FOR**
13                                     )   **SUMMARY JUDGMENT**
    COUNTY OF SAN BERNARDINO,          )
14  et al.,                            )
                                       )
15             Defendants.             )
                                       )
16  ─────────────────────────────

17                              **I.**

18                        **INTRODUCTION**

19          On May 29, 2012, plaintiff Naaji Kingstro filed a civil rights complaint

20  pursuant to 42 U.S.C. § 1983.  The case arises out plaintiff's September 20, 2011

21  arrest by San Bernardino Sheriff's deputies in a shopping center in Victorville,

22  California.  Plaintiff alleges, inter alia, that sheriff's deputies used excessive force

23  in arresting him.

24          Defendants moved to dismiss the complaint, and shortly thereafter plaintiff

25  filed a First Amended Complaint ("FAC") on August 6, 2012.  The court thus

26  denied as moot defendants' motion to dismiss the complaint.  The defendants in

27  turn moved to dismiss the FAC on August 13, 2012.  Before the defendants'

28  motion to dismiss the FAC was acted upon, the court granted, on September 20,

                                    1

1  2012, the parties' stipulation to allow plaintiff to file a Second Amended Complaint

2  ("SAC"), which plaintiff filed on September 27, 2012.

3       Construed liberally, the SAC alleges that plaintiff and a friend parked in

4  front of the Outback Steakhouse on Amargosa Road in Victorville, California and

5  that plaintiff, upon exiting his car, was taken by surprise by San Bernardino

6  Sheriff's Deputy Vega who was parked behind him.  Defendant Vega failed to

7  identify himself to plaintiff and to apprise plaintiff of why he was attempting to

8  stop him.  Defendant Vega immediately reached for his Taser and shouted at

9  plaintiff to get back into his car.  Plaintiff immediately put his hands in the air,

10  indicating his willingness to cooperate with law enforcement.  Defendant Vega

11  approached plaintiff in an attempt to tase him and plaintiff ran away in an attempt

12  to call attention to the situation.  Plaintiff shouted: "What have I done wrong?" as

13  he tried to avoid being tased by defendant Vega.  After a foot chase lasting about

14  two minutes, plaintiff surrendered to defendant Vega by dropping to his knees,

15  putting his hands on top of his head, and prostrating himself in a "defenseless

16  prone position."  Defendant Vega, without provocation, proceeded to strike

17  plaintiff repeatedly with his baton.  At no point did plaintiff attempt to hit or kick

18  any of the law enforcement officers.  Plaintiff, who was taken into custody,

19  sustained multiple injuries, including a skull fracture and a broken nose.

20       The SAC names as defendants the County of San Bernardino, San

21  Bernardino County Sheriff-Coroner's Department ("SBSD"), Deputy

22  Sheriff-Coroner John Vega, Deputy Sheriff-Coroner Floyd Stone, Sheriff-Coroner

23  Rod Hoops, and Does 1 through 50.  Plaintiff alleged nine causes of action in the

24  SAC: (1) unlawful seizure of plaintiff in violation of the Fourth Amendment under

25  42 U.S.C. § 1983 against all defendants; (2) excessive force in violation of the

26  Fourteenth and Fourth Amendments against defendants Vega and Stone, also under

27  42 U.S.C. § 1983; (3) negligence and gross negligence against all defendants in

28  breaching the duty of care they owed to plaintiff; (4) failure to protect plaintiff

against all defendants;  (5) battery against defendants County of San Bernardino, SBSD, Vega, and Stone; (6) violation of civil rights against all defendants; (7) *Monell* claims against defendants County of San Bernardino and SBSD for adopting policies and practices allowing SBSD employees to use excessive force, and against defendants County and Hoops for failure to train and supervise defendant Vega; (8) *Monell* liability on the County's part for policies, procedures, and customs that allow the use of excessive force; and (9) negligence and gross negligence against all defendants in breaching the duty of care they owed to plaintiff.[1]

Defendants answered the SAC on October 15, 2012, asserting numerous affirmative defenses.  On February 4, 2014, the parties stipulated to dismiss certain claims and defendant Stone.  The court dismissed defendant Stone with prejudice as well as the following causes of action: (1) the fourth cause of action for failure to protect plaintiff; (2) the eighth cause of action for violation of civil rights pursuant to 42 U.S.C. § 1983 "and any reference to false arrest or false imprisonment."  The court also dismissed "any allegations of medical deliberate indifference" as to defendant Vega.  Thus, the remaining claims allege civil rights and state tort causes of action for excessive force as to defendant Vega and the County Defendants (namely, defendants County of San Bernardino, SBSD, and Hoops), and failure to provide medical care in violation of the Fourteenth Amendment as to the County Defendants.

Defendants have moved for summary judgment, raising five arguments: (1) defendant Vega's use of force was reasonable; (2) defendant Vega is entitled to

---

[1]   The court notes that plaintiff's numbers for the causes of action are not sequential.  *See* SAC.  "Seventh cause of action" follows "fourth cause of action" and then the causes of action continue through the "eleventh."  *Id.* at 9-10.  The court here refers to the causes of action sequentially, as if there were not a break from fourth to seventh.

1  qualified immunity from the causes of action stated under 42 U.S.C. § 1983; (3)

2  plaintiff's claims are barred under *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct.

3  2364, 129 L. Ed. 2d 383 (1994); (4) plaintiff's claims of negligence fail to state a

4  cause of action; and (5)  plaintiff cannot establish *Monell* liability against the

5  County of San Bernardino, the San Bernardino Sheriff's Department, or defendant

6  Hoops.  These arguments and plaintiff's responses were filed on March 3, 2014 in a

7  Joint Motion for Summary Judgment ("JM").  The parties also filed a Joint

8  Appendix of Disputed and Undisputed Facts ("JA"), and defendants filed an

9  Evidentiary Appendix ("EA").

10       This matter came before the court for a hearing on June 10, 2014, at which

11  time the court gave the parties' its tentative ruling to grant defendants' summary

12  judgment motion.  The court permitted the parties to file supplemental briefing

13  with the court following the hearing.  Plaintiff filed his supplemental briefing on

14  June 24, 2014, titling it his Opposition to Tentative Ruling ("Pl. Supp.").

15  Defendants filed their supplemental briefing on June 27, 2014, titled their Reply to

16  Opposition to Tentative Ruling ("Def. Supp.").

17       For the reasons that follow, the court finds defendants are entitled to

18  summary judgment on all the claims against them.  First, the court finds that *Heck*

19  does not bar plaintiff's action.  Second, the court finds the undisputed facts show

20  the force used by defendant Vega was not excessive.  In particular, absent

21  plaintiff's failure to timely respond to defendants' Requests for Admission

22  ("RFAs") there would be material disputed issues of fact that would preclude

23  summary judgment on the excessive force claims, but with the deemed admissions

24  no disputed facts remain that preclude summary judgment.  The court denies

25  plaintiff's untimely motion to withdraw the deemed admissions.  Third, the court

26  finds that plaintiff has abandoned his negligence claims.  And finally, the court

27  finds plaintiff fails to state a *Monell* claim against San Bernardino County, San

28  Bernardino Sheriff's Department, and defendant Hoops.

# II.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is "genuine" only if there is a sufficient evidentiary basis on which a "reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *see also Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (citation omitted) ("Where the record taken as a whole would not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial"). A factual dispute is "material" only if it might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248. All reasonable inferences that may be drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). At the summary judgment stage, the court's function is not to weigh the evidence or determine the truth of the matter, but rather to determine whether there is any genuine issue for trial. *Anderson*, 477 U.S. at 249; *Balint v. Carson City*, 180 F.3d 1047, 1054 (9th Cir. 1999) (en banc).

The moving party bears the initial burden of informing the court of the basis of its motion and identifying admissible evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265  (1986). If the moving party satisfies its initial burden, Rule 56 requires the party opposing the motion to respond by making a "showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of [his] case necessarily

1  renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.  In attempting to

2  establish the existence of this factual dispute, the opposing party may not rely upon

3  conclusory allegations or pleading unsupported by factual data, but is required to

4  tender evidence of specific facts in the form of affidavits, and/or admissible

5  discovery material, in support of its contention that the dispute exists.  *See* Fed. R.

6  Civ. P. 56(e); *Matsushita*, 475 U.S. at 586 n.11; *Taylor v. List*, 880 F.2d 1040,

7  1045 (9th Cir. 1989).

8       In determining any motion for summary judgment or partial summary

9  judgment, the court may assume that the material facts as claimed and adequately

10  supported by the moving party are admitted to exist without controversy except to

11  the extent that such material facts are (a) included in the "Statement of Genuine

12  Disputes" and (b) controverted by declaration or other written evidence filed in

13  opposition to the motion.  Local Rule 56-3.  If a party fails to properly support an

14  assertion of fact or fails to properly address another party's assertion of fact, the

15  court may consider the fact undisputed for purposes of the motion.  Fed. R. Civ. P.

16  56(e)(2).

17                                                **III.**

18         **DEFENDANTS' OBJECTIONS TO PLAINTIFF'S SUBMISSIONS**

19       Defendants object to portions of plaintiff's declaration and also to any

20  reference to the police report.  JM at 11-12.

21       Defendants present the following objections to portions of plaintiff's

22  declaration (EA Ex. F): (1) that the portion of  ¶16 wherein plaintiff alleges that

23  officers kicked him in the face, breaking his nose is irrelevant to the conduct of

24  defendant Vega; (2) that paragraphs of the declaration mentioning plaintiff's

25  alleged injuries (¶¶16, 19, 22) lack foundation because plaintiff is not a medical

26  expert; (3) that ¶¶ 7, 8, 10, 27 conflict with plaintiff's deemed admissions 1-5, 10-

27  14, and 17-18.  The court overrules these objections, except as to the portions of

28  paragraph 27 that directly conflict with the deemed admissions.

1    Defendants' sole objection to the police report is that it constitutes

2    inadmissible hearsay.  The court agrees and sustains this objection.  The court has

3    therefore not considered the police report in ruling on the instant motion.

4                                      IV.

5                    **UNDISPUTED AND DISPUTED FACTS**

6        The first step in assessing defendants' actions is to determine the relevant

7    facts.  *See Scott v. Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 167 L. Ed. 2d 686

8    (2007).  In the instant case, this determination is complicated by two factors: (1)

9    the existence of surveillance footage of the incident, which is in some areas, noted

10   below, inconsistent with plaintiff's version of events; and (2) the facts in the RFAs

11   propounded by defendants that are deemed admitted because plaintiff failed to

12   respond, but that are clearly at odds with plaintiff's position and evidence admitted

13   in support thereof.

14   A.    **The Facts in Evidence**

15       The court begins with a description of the undisputed and disputed facts as

16   depicted in the surveillance video and the parties' evidentiary submissions, with the

17   exception of the deemed admissions, which are discussed in the next section.

18       On September 20, 2011, a loss prevention officer from Kohl's in Victorville,

19   California contacted the San Bernardino Sheriff's Department, reporting a theft that

20   was in progress at the store of approximately $800 worth of merchandise and

21   requesting assistance.  EA Ex. A at 10, 11, 37, 38.  Defendant Vega responded to

22   the call by attempting to locate the suspect car.  *Id.* at 11-12.  Upon observing what

23   he believed to be the suspect car in the vicinity of Kohl's, defendant Vega followed

24   it.  *Id.* at 12-13.  When the suspect car pulled into a parking space at the Outback

25   Steakhouse, defendant Vega stopped his car a few feet behind it.  *Id.* at 12-14;

26   Outback Steakhouse Surveillance Video ("OSV") 1 0:00-0:13.  Defendant Vega

27   testified in his deposition that he activated his lights.  EA Ex. A at 13.  This is not

28   apparent from the video.  OSV-1 0:05-0:12.

1    Defendant Vega and plaintiff simultaneously got out of their respective cars.
2  OSV-1 0:12-0:19.  Plaintiff shut the door of his car and then stood still as defendant
3  Vega advanced towards him, initially pointing with his left hand at plaintiff.  OSV-1
4  0:15-0:20.  It is not possible to see in the video whether defendant Vega has
5  anything in his hand, nor is it possible to hear any verbal exchange between the
6  parties as the surveillance footage does not include an audio recording of the
7  interaction.  *Id.*  According to plaintiff, defendant Vega yelled at him as he exited
8  his car, telling him to get back into the car.  EA Ex. F at 77.[2]  When plaintiff asked
9  defendant Vega what he had done, defendant Vega became verbally abusive and
10  threatened to tase plaintiff.  *Id.*  Defendant Vega held a Taser as he said this to
11  plaintiff.  *Id.*  In the video, as he walks toward plaintiff, it appears that defendant
12  Vega touches the right side of his waist and then points at plaintiff with his right
13  hand briefly.  *Id.*  Defendant Vega continued to approach plaintiff, who continued to
14  stand still.  OSV-1 0:20-0:22.  Plaintiff ignored defendant Vega's commands to get
15  back into his car.  EA Ex. A. at 15, 16, 18.  Similarly, when defendant Vega asked
16  plaintiff to put his hands behind his back, plaintiff did not comply.  EA Ex. A at 20;
17  JA D9.

18    Suddenly, plaintiff ran from defendant Vega in an effort not to be tased and
19  sprinted through the parking lot to the side of Outback Steakhouse and around the
20  restaurant to the south and west.  EA Ex. F at 77; OSV-1 0:22-0:37; *see also* OSV-2
21  00:00-00:32, OSV-3 00:00-00:34, OSV-4 00:00-00:11.  Plaintiff does not dispute
22  that defendant Vega ordered him to stop several times and advised him repeatedly
23  that if he did not stop, defendant Vega would tase him.  JA D13, D15.  Plaintiff
24  continued to run.  JA D16.  Defendant Vega attempted to use his Taser, but the darts
25  did not deploy.  JA D17.  An additional sheriff's department patrol car arrived and

26  ────────────────

27    [2]   The court notes that there is an inconsistency here between plaintiff's
declaration and the JA.  In the JA, plaintiff denies that defendant Vega told him to
28  get back into his car.  JA D5.

1  drove through the parking lot in front of Outback Steakhouse and around back in
2  the direction that plaintiff and defendant Vega ran.  OSV-1 0:49-0:56.  An
3  additional patrol car with its lights on drove northeast around the back of Outback
4  Steakhouse and stopped in front of the side entrance, close to where defendant Vega
5  and plaintiff parked.  OSV-1 2:12-2:18.

6       Defendants assert that during the chase plaintiff stopped and turned around, at
7  which point defendant Vega attempted to grab him, but plaintiff evaded the grasp
8  and pushed defendant Vega to the ground.  EA Ex. A at 22, 41.  Plaintiff asserts that
9  defendant Vega tripped and fell, then got up and resumed chasing plaintiff.  EA Ex.
10  F ¶ 10.  The video surveillance footage does not show this encounter, and thus does
11  not address either side's version.  The parties do not dispute that additional San
12  Bernardino Sheriff's deputies in their cars tried to cut off plaintiff as he ran but that
13  he dodged the other deputies' cars that pursued him.  JA D23, D24.  There is also no
14  dispute that plaintiff continued to run, despite defendant Vega's commands to stop.
15  JA D25.

16       The video shows that at some point plaintiff stopped running, and plaintiff
17  can be seen limping along at a brisk walk and then rounding the corner towards the
18  side parking lot.  OSV-5 01:38-1:43.  Defendant Vega came jogging behind him.
19  OSV-5 01:42-01:45.  From the orientation and movement of plaintiff's and
20  defendant Vega's feet and legs – which are all that is visible of them at this point in
21  the video – plaintiff appears to turn toward and face the advancing defendant Vega,
22  who then appears to strike plaintiff, causing plaintiff to fall to the ground.  OSV-5
23  01:45-01:46.

24       After making contact with the ground, plaintiff rolled onto his back, covering
25  his midsection with his forearms.  OSV-1 2:16.  Plaintiff quickly rolled onto his
26  right side as defendant Vega whacked plaintiff's left arm with his baton.  OSV-1
27  2:16-2:18.  Plaintiff proceeded to roll onto his stomach and covered the back of his
28  neck with his hands.  OSV-1 2:18-2:22.  With plaintiff in this position, face down

1   towards the concrete sidewalk, defendant Vega struck him with the baton twice
2   more in the middle of plaintiff's back.  OSV-1 2:18-2:22.  Around this time, the
3   deputy driving the second patrol car parked and ran toward defendant Vega and
4   plaintiff.  OSV-1 2:18-2:22.  With the second whack, plaintiff turned towards the
5   direction of the blow upwards to his left.  Defendant Vega then pushed plaintiff face
6   down into the sidewalk, planted his knee into plaintiff's back, and pulled plaintiff's
7   left arm behind plaintiff's back.  OSV-1 2:22-2:25.  Around that time, the second
8   deputy reached plaintiff and defendant Vega and assisted in holding plaintiff face
9   down until a third deputy joined them and helped to subdue plaintiff by pulling his
10  right arm around his back.  OSV-1 2:23-2:36.  Defendant Vega got up and stepped
11  back and away from plaintiff as the second and third deputies held plaintiff down
12  and handcuffed him.  OSV-1 2:45-2:52.  Defendants assert that while plaintiff was
13  on his stomach, before being handcuffed, he kicked his legs in resistance.[3]  EA Ex.
14  A at 27.  The video does not reveal whether defendant was kicking while he was on
15  the ground because he is only visible from the waist up and, for much of this
16  encounter, only the backs of law enforcement officers are visible.  *See* OSV-1 2:18-
17  3:00.

18          Once plaintiff was handcuffed, the second deputy stood up, leaving only the
19  third deputy in contact with plaintiff.  OSV-1 2:58-2:59.  Thereafter, plaintiff lay
20  motionless facedown on the pavement until one of the deputies rolled him first on
21  his left side and then on his right, revealing what appears to be a pool of blood on
22  the sidewalk underneath plaintiff's face.  OSV-1 2:59-3:52.  Shortly thereafter,
23  deputies sat plaintiff up and moved him to sit in the sun in the parking lot, propped
24  against the tire of one of the squad cars.  OSV-1 4:18- 5:15.  Seconds later, the
25  deputies moved plaintiff to a shadier spot, propped against the front of another

26  _____

27      [3]    At page 12 of the JA, the "Evidence in Support of Fact" column drops out.
28  The court has reviewed and provided its own citation to the record for these
    disputed facts.

1  squad car.  OSV-1 5:19-5:32.  Plaintiff stayed there, alternately lying on his side on
2  the ground and propped against the car until an ambulance arrived.  OSV-1 5:32-
3  8:58.  Plaintiff was given medical attention and ultimately placed onto a stretcher.
4  OSV-1 8:58-18:08.

5       According to plaintiff, the final events unfolded differently.  As he ended up
6  back in front of the Outback Steakhouse, he decided to give himself up to the police
7  and thus went down on his knees.  EA Ex. F at 77.  As he put his hands on top of his
8  head, defendant Vega came up from behind him, knocked him on his stomach, and
9  started to hit him about the head, back, and legs with his asp.  *Id.*  Defendant Vega
10 struck plaintiff several times as he lay prone on the ground in a non-combative
11 manner.  *Id.*  At some point, two additional officers arrived and held down
12 plaintiff's arms.  *Id.*  Plaintiff never attempted to kick or hit any of the officers.  *Id.*
13 He asserts that one of the deputies kicked him in the face, breaking his nose.  *Id.*

14      Plaintiff was charged with resisting a peace officer with threat of violence and
15 burglary, in violation of §§ 69 and 459 of the California Penal Code, respectively.
16 J.A. at 15.  Plaintiff pled guilty to a violation of § 148 of the California Penal Code,
17 which provides: "Every person who willfully resists, delays, or obstructs any . . .
18 peace officer . . . in the discharge or attempt to discharge any duty of his or her
19 office or employment, . . . shall be [guilty of a misdemeanor]."  EA ex. D; *see Smith*
20 *v. City of Hemet*, 394 F.3d 689 (9th Cir. 2005) (citing Cal. Penal Code § 148).

21 **B.**     **The Deemed Admissions and Plaintiff's Motion to Withdraw Them**

22      Defendants served requests for admission on plaintiff on August 9, 2013.
23 McGowan Decl.; EA Ex. B.  Defendants opted to serve these RFAs after they were
24 unable to depose plaintiff in California during the summer of 2013 due to his
25 incarceration in Georgia.  McGowan Supp. Decl. at 12.  Defendants did not receive
26 responses to the RFAs.  McGowan Decl.  Plaintiff did ultimately respond to the
27 RFAs, but not until December 16, 2013.  Pl. Supp. Ex. 2.  Under the Federal Rules
28 of Civil Procedure, failure to respond to RFAs within 30 days of their service results

1  in the matters in the requests being deemed admitted.  Fed. R. Civ. P. 36(a)(3).

2      1.  **Background**

3      On November 12, 2013, defendants' counsel sent an email to plaintiff's

4  counsel noting that plaintiff had not responded to the RFAs or other discovery

5  requests served on August 9, 2013, and stating that defendants would be filing a

6  motion for summary judgment based on plaintiff's deemed admissions.  Def. Supp.

7  Ex. A.  Plaintiff's counsel responded that day, stating he believed plaintiff had

8  responded to all written discovery requests but would check his file to make sure.

9  *Id.*

10     On December 2, 2013, defendants' counsel emailed a letter to plaintiff's

11  counsel stating she had not heard back from him regarding the discovery to which

12  plaintiff had not responded, and requesting to meet and confer about defendants'

13  intended summary judgment motion.  Def. Supp. Ex. B.  Counsel spoke on

14  December 5, 2013, during which conversation defendants' counsel again stated that

15  the RFAs were deemed admitted and would serve as a basis for their summary

16  judgment motion.  McGowan Supp. Decl. at 13; Sgro Supp. Decl. ¶ 5.  Plaintiff's

17  counsel said he could not locate the requests, and asked for a courtesy copy of the

18  discovery requests.  McGowan Supp. Decl. at 13-14; Sgro Supp. Decl. ¶ 5.  On

19  December 6, 2013, defendants sent plaintiff another set of copies of the discovery

20  requests served on August 9, 2013.  Def. Supp. Ex. D; Sgro Supp. Decl. ¶ 6.

21     When counsel spoke again on December 10, 2013, they again discussed the

22  deemed admissions, and also discussed plaintiff's request for a further continuance

23  of the trial date.  McGowan Supp. Decl. at 14.  Two days later plaintiff filed a

24  motion to continue the trial date.  In defendants' opposition to that motion filed on

25  December 16, 2013, defendants stated that plaintiff had not served responses to the

26  discovery requests propounded on August 9, 2013, and asserted that the matters in

27  the RFAs were thus deemed admitted.  12/16/13 Opp. at 5.

28     With his supplemental briefing, plaintiff submitted a copy of responses to the

RFAs with a proof of service showing they were served on defendants on December 16, 2013.  Pl. Supp. Ex. 2.  Defendants maintain they never received those RFA responses until plaintiff attached them as an exhibit to his supplemental briefing filed on June 24, 2014.  McGowan Supp. Decl. at 14-16.  Counsel met and conferred on January 7, 2014 regarding the summary judgment motion, with defendants' counsel again stating that the motion would be based in part on plaintiff's deemed admissions due to his failure to respond to the RFAs.  *Id.* at 15.  Plaintiff's counsel stated he had recently served responses to the RFAs; defendants' counsel advised him she had not received those responses.  *Id.*  On February 3, 2014 defendants' counsel again told plaintiff's counsel she had not received the RFA responses.  *Id.*

A party may move for permission to withdraw admissions (Fed. R. Civ. P. 36(b));  however, plaintiff made no such motion in this case until the June 10, 2014 hearing on the summary judgment motion.  Indeed, plaintiff did not even address the deemed admission in his portions of the Joint Motion.  According to defendants' counsel, plaintiff's counsel also never asked defendants to stipulate to set aside the deemed admissions.  McGowan Supp. Decl. at 15.

At the hearing on this motion, the court pointed out that plaintiff had not requested that the deemed admissions be withdrawn, or even addressed the issue in his papers.  Plaintiff's counsel stated that he believed he had addressed the issue by submitting plaintiff's declaration that contradicts the deemed admissions, and ultimately he stated he was now seeking relief from the deemed admissions.  In his declaration submitted with his supplemental briefing, plaintiff's counsel stated that, due to the transfer of this case from Judge Olguin to Magistrate Judge Pym (which occurred in April, after the summary judgment motion was fully briefed), counsel believed his first opportunity to request withdrawal of the deemed admissions was at the summary judgment hearing and status conference on June 10, 2014.  Sgro Supp. Decl. ¶ 11.

13

1     **2.    The Motion to Withdraw the Admissions**

2          The court may permit the withdrawal of deemed admissions "if it would

3     promote the presentation of the merits of the action and if the court is not persuaded

4     that it would prejudice the requesting party in maintaining or defending the action

5     on the merits."  Fed. R. Civ. P. 36(b).

6               The prejudice contemplated by Rule 36(b) is "not simply that the party

7               who obtained the admission will now have to convince the factfinder of

8               its truth.  Rather, it relates to the difficulty a party may face in proving

9               its case, *e.g.*, caused by the unavailability of key witnesses, because of

10              the sudden need to obtain evidence" with respect to the questions

11              previously deemed admitted.

12    *Hadley v. U.S.*, 45 F.3d 1345, 1348 (9th Cir. 1995) (quoting *Brook Village N. Assoc.*

13    *v. General Elec. Co.*, 686 F.2d 66, 70 (1st Cir. 1982)).  "The party who obtained the

14    admission has the burden of proving that withdrawal of the admission would

15    prejudice the party's case."  *Id.* (citation omitted).

16          It appears that through a series of mishaps plaintiff's counsel never saw or

17    perhaps lost the RFAs originally served, and then when he finally obtained them

18    and served late responses, defendants' counsel never received them.  This series of

19    events is concerning but understandable.  What is not understandable is plaintiff's

20    counsel's failure to promptly seek defendants' stipulation to withdrawal of the

21    deemed admissions and, if such stipulation were not forthcoming, then to promptly

22    seek such relief from the court.  At a minimum, given the January 31, 2014

23    discovery cutoff and the court's scheduling order that provided all hearings on

24    discovery motions were to be completed by the discovery cutoff, plaintiff was

25    required to file any motion to withdraw the deemed admissions before January 31,

26    2014.  Even more mystifying is plaintiff's counsel's failure to even address the issue

27    in plaintiff's portion of the summary judgment papers.  Plaintiff's counsel's

28    contention that he believed his first opportunity to request withdrawal of the deemed

14

1  admissions was at the June 10, 2014 hearing – three months after the parties had
2  filed their summary judgment papers, and seven months after he first learned
3  defendants intended to move for summary judgment based on the deemed
4  admissions – is either not credible or reflects an inexcusable misunderstanding of
5  federal legal practice and procedure.

6      Plaintiff has now, finally, moved to withdraw the admissions.  Plaintiff meets
7  the first requirement in Rule 36(b) for such a motion to be granted, as it would
8  promote the presentation of this case on its merits if the admissions were
9  withdrawn.  *See Hadley*, 45 F.3d at 1348 ("The first half of the test in Rule 36(b) is
10 satisfied when upholding the admissions would practically eliminate any
11 presentation of the merits of the case.").  But the second requirement is another
12 matter, as the court finds defendants would be prejudiced in presenting the merits of
13 their case if plaintiff were permitted to withdraw the deemed admissions at this late
14 date in the case after defendants relied on them for so long.

15     Defendants undoubtedly relied on the admissions for their summary judgment
16 motion; however, "reliance on a deemed admission in preparing a summary
17 judgment motion does not constitute prejudice."  *Conlon v. U.S.*, 474 F.3d 616, 624
18 (9th Cir. 2007) (citations omitted).  Likewise, the Ninth Circuit has been "reluctant
19 to conclude that a lack of discovery, without more, constitutes prejudice."  *Id.*
20 Instead, the prejudice inquiry should focus on the prejudice the party who relied on
21 the deemed admissions would suffer at trial.  *Id.* at 623.  The record before the court
22 reflects that defendants would be prejudiced at trial due to the many months
23 defendants reasonably relied on the admissions with no indication plaintiff would
24 seek their withdrawal.

25     Defendants' counsel repeatedly advised plaintiff's counsel, in November,
26 December, and January, of defendants' intent to rely on the deemed admissions.
27 Defendants have reasonably relied on the deemed admissions since the date for
28 plaintiff to respond to the RFAs passed in early September 2013, and were certainly

1    entitled to rely on the admissions since November 2013 when they advised plaintiff
2    of their intent to rely on the deemed admissions and plaintiff did nothing to seek
3    their withdrawal.  To grant plaintiff's request to withdraw the deemed admissions –
4    first made in June, seven months after plaintiff's counsel was advised defendants
5    intended to rely on the admissions, and after the close of discovery, and after
6    summary judgment has been briefed, and with nothing remaining in this case but the
7    trial that will commence if summary judgment is not granted – would unfairly
8    prejudice defendants, including at trial.

9          This is not a case like *Hadley*, in which the court found no prejudice to the
10   party relying on the admissions, in part because the RFA responses in that case were
11   not due until days before the close of discovery, and thus the relying party could not
12   have decided to forego any discovery in reliance on the deemed admissions.  *See*
13   *Hadley*, 45 F.3d at 1349.  In this case, the responses were due in September 2013,
14   more than four months before the close of discovery.  This case is more akin to
15   *Conlon*, in which the finding of prejudice was upheld where "the government relied
16   on the admissions for a total of two and a half months, through the discovery and
17   dispositive motion cut-off dates, with no indication that Conlon intended to file a
18   motion to withdraw his admissions." *See Conlon*, 474 F.3d at 624.  Here,
19   defendants' relied on the admissions through the same deadlines, and for three times
20   as long a period.

21         Moreover, plaintiff has not shown good cause for the court to permit him to
22   withdraw the deemed admissions at this late date in the case.  "Rule 36(b) is
23   permissive, not mandatory, with respect to the withdrawal of admissions." *Id.* at
24   621 (citation omitted).  Even where both requirements of Rule 36(b) are met, the
25   court is not required to grant a motion to withdraw the deemed admissions. *Id.* at
26   624.  In deciding whether to exercise its discretion to grant a motion to withdraw
27   admissions, the court "may consider other factors, including whether the moving
28   party can show good cause for the delay and whether the moving party appears to

16

1  have a strong case on the merits." *Id.* at 625.  Here, like in *Conlon*, neither plaintiff
2  nor, perhaps more precisely, his counsel has shown "good cause for his dilatory
3  conduct." *See id.*  As noted above, while plaintiff has explained how he came to
4  serve his responses to the RFAs so late, he has not satisfactorily explained why he
5  waited so long to move to withdraw the admissions, allowing defendants to rely on
6  them for months.

7       Under all these circumstances, plaintiff's motion to withdraw the deemed
8  admissions lacks merit, and is denied.

9       **3.   <u>The Matters Deemed Admitted</u>**

10      A matter admitted under Rule 36 is "conclusively established."  Fed. R. Civ.
11  P. 36(b).  Because plaintiff did not timely respond to the RFAs and the court has
12  denied his motion to withdraw the deemed admissions, the following "facts" are
13  deemed admitted and thus conclusively established:

14      •   Plaintiff ran away in attempt to escape from defendant Vega.

15      •   Plaintiff ran away in attempt to escape from Deputy Stone.

16      •   Plaintiff hit defendant Vega when he attempted to detain plaintiff.

17      •   Plaintiff resisted arrest from defendant Vega.

18      •   Plaintiff resisted arrest from Deputy Stone.

19      •   Plaintiff did not sustain injuries from any of the deputies as a result of
20          this incident.

21      •   Any injuries plaintiff claims to have suffered in this incident were
22          caused by another incident not related to this matter.

23      •   Plaintiff suffers and has suffered head pain as a result of a motor
24          vehicle accident that he was in prior to this incident.

25      •   Plaintiff suffers and has suffered back pain as a result of a motor
26          vehicle accident that he was in prior to this incident.

27      •   Plaintiff threatened to hit defendant Vega.

28      •   Plaintiff failed to comply with orders given to him by defendant Vega.

1    •   Plaintiff failed to comply with orders given to him by Deputy Stone.

2    •   Plaintiff refused to go to the ground when ordered to do so by

3        defendant Vega.

4    •   Plaintiff refused to go to the ground when ordered to do so by Deputy

5        Stone.

6    •   Plaintiff attempted to trick defendant Vega into believing plaintiff had

7        a weapon on his person.

8    •   Plaintiff attempted to trick Deputy Stone into believing he had a

9        weapon on his person.

10   •   Defendant Vega engaged plaintiff in a foot pursuit.

11   •   Deputy Stone engaged plaintiff in a foot pursuit.

12   EA Ex. B.

13                                  **V.**

14            **DISCUSSION OF SUMMARY JUDGMENT MOTION**

15   **A.    Plaintiff's Claims of Excessive Force Are Not Barred by *Heck***

16        Plaintiff claims that defendant Vega used excessive force by hitting him with

17   a baton and kicking him, all while he was compliant, lying prone on the ground.

18   Defendants argue that *Heck v. Humphrey* bars plaintiff's claims for excessive force

19   because plaintiff was convicted of violating California Penal Code Section 148(a).

20   JM at 19-21.

21        In *Heck*, the United States Supreme Court held that a plaintiff may not bring a

22   § 1983 action for damages based on "actions whose unlawfulness would render a

23   conviction or sentence invalid" when the plaintiff's conviction or sentence has not

24   yet been reversed, expunged, or otherwise invalidated.  512 U.S. at 486-87.  "'[I]f a

25   criminal conviction arising out of the same facts stands and is fundamentally

26   inconsistent with the unlawful behavior for which section 1983 damages are sought,

27   the 1983 action must be dismissed.'"  *Smith*, 394 F.3d at 695 (quoting *Smithart v.*

28   *Towery*, 79 F.3d 951, 952 (9th Cir. 1996)).  Thus, "the relevant question is whether

                                      18

success in a subsequent § 1983 suit would 'necessarily imply' or 'demonstrate' the invalidity of the earlier conviction or sentence." *Id.* (quoting *Heck*, 512 U.S. at 487).

Plaintiff here pled guilty to a violation of California Penal Code § 148(a)(1), which provides: "Every person who willfully resists, delays, or obstructs any . . . peace officer . . . in the discharge or attempt to discharge any duty of his or her office or employment, . . . . shall be [guilty of a misdemeanor]." *Hooper v. Cnty. of San Diego*, 629 F.3d 1127, 1130 (9th Cir. 2011). "For a conviction under § 148(a)(1) to be valid, the defendant must have resisted, delayed, or obstructed a police officer in the lawful exercise of his or her duties." *Id.* (internal quotation marks, brackets, and citation omitted). "The lawfulness of the officer's conduct is an essential element of the offense under § 148(a)(1)." *Id.*

Defendants point out correctly that the dispositive inquiry is whether plaintiff's conviction "was based in whole or part on [p]laintiff's actions during the arrest phase, rather than limited to a distinct phase prior to or after arrest." JM at 20. Defendants locate the moment of plaintiff's obstruction to his arrest "at the very point that Vega attempted to place Kingstro in custody, handcuff, and arrest him[,]" when defendant Vega caught up with plaintiff behind the Outback Steakhouse. JM at 20. The only authority for this proposition concerning the moment of plaintiff's obstruction, however, is defendant's say-so. As in *Smith*, a case akin to the instant case, there is nothing in the record before us that elucidates the exact actions underlying plaintiff's conviction. And that indeterminateness dictates the outcome here, as it did in *Smith*.

In *Smith*, the Ninth Circuit considered whether a conviction under California Penal Code § 148(a) necessarily bars a § 1983 action for excessive force. 394 F.2d at 693. Responding to a domestic violence call at Smith's home, law enforcement found Smith standing on his porch with his hands in his pockets. *Id.* The first officer to arrive asked Smith to remove his hands from his pockets to show that he

1  had no weapons. *Id.* Smith initially refused, but ultimately showed the officers his

2  hands. Despite his yielding on that front, he refused to cooperate with the officers'

3  other demands. *Id.* at 693-694. The responding officers consequently came onto

4  the porch, sprayed Smith with pepper spray, and sicced a police dog on him. *Id.* at

5  694. The officers repeatedly sprayed Smith with pepper spray and ordered the dog

6  to bite him multiple times. *Id.* Smith pled guilty to a violation of California Penal

7  Code § 148(a)(1) and sued the officers for use of excessive force under 42 U.S.C.

8  § 1983. *Id.* En banc, the Ninth Circuit held that *Heck* did not bar his excessive

9  force claim, "because the excessive force may have been employed against him

10 subsequent to the time he engaged in the conduct that constituted the basis for his

11 conviction." *Id.* at 693.

12      The Ninth Circuit reasoned that Smith violated § 148(a) in two temporally-

13 distinct phases. *Hooper*, 629 F.3d at 1130. In the first "investigative" phase, Smith

14 resisted, delayed, or obstructed law enforcement before they came onto the porch of

15 his home. *Smith*, 394 F.3d at 698; *Hooper*, 629 F.3d at 1130. "Second, he resisted,

16 delayed, or obstructed the officers when they physically arrested him." *Id.* The

17 Ninth Circuit noted that the record did not specify the factual basis for Smith's

18 guilty plea; therefore, "the plea could properly have been based on his behavior

19 during the first phase." *Id.* If that were the case, a judgment in Smith's favor on his

20 excessive force claim would not necessarily render his resisting arrest conviction

21 invalid. *Id.* at 1130-1131; *Smith*, 394 F.3d at 699 ("Because on the record before us

22 we cannot determine that the actions that underlay Smith's conviction upon his plea

23 of guilty occurred at the time of or during the course of his unlawful arrest, Smith's

24 success in the present [§ 1983] action would not necessarily impugn his conviction.

25 Accordingly, the defendants are not entitled to summary judgment on the basis of

26 *Heck v. Humphrey*.").

27      Similarly, there are at least two temporally-distinct phases here. First, there is

28 the phase from the initial contact between law enforcement and plaintiff in the

1  Outback Steakhouse parking lot through the foot chase.  *See* OSV-1 0:12-0:37.

2  Second, there is the phase after the foot chase, when plaintiff limps past the front of

3  the Outback Steakhouse and back towards the parking lot where defendant Vega

4  catches up to him, plaintiff falls to the ground, and defendant Vega beats plaintiff

5  with his baton.  OSV-5 01:38-01:46.  Plaintiff's conduct in the first phase, when he

6  took off running around the parking lot in the midst of his interaction with

7  defendant Vega, would be sufficient to violate Penal Code § 148(a).  The record

8  does not establish the precise basis for plaintiff's plea, but since his conduct in the

9  first phase was sufficient to support such a conviction, any § 1983 claim by plaintiff

10  based on defendant Vega's use of force in the second phase would not be barred by

11  *Heck*.  *Smith*, 394 F.3d at 698.  Success on such a claim would not necessarily imply

12  the invalidity of plaintiff's § 148(a) conviction.  Thus, plaintiff's claims are not

13  barred by *Heck*.

14  **B.    Defendant Vega Is Entitled to Summary Judgment on the Excessive**

15  **        Force Claims**

16          Defendant Vega asserts that his use of force was reasonable, and that in any

17  event he is qualifiedly immune from plaintiff's excessive force claims.  The court

18  agrees with defendant that the undisputed facts show he did not use excessive force.

19          The court considers defendant Vega's use of force "in light of the Fourth

20  Amendment's prohibition on unreasonable seizures."  *Deorle v. Rutherford*, 272

21  F.3d 1272, 1279 (9th Cir. 2001) (citing *Graham v. Connor*, 490 U.S. 386, 109 S. Ct.

22  1865, 104 L. Ed. 2d 443 (1989); *Chew v. Gates*, 27 F.3d 1432, 1440 (9th Cir.

23  1994)).  All claims of excessive force are analyzed under the objective

24  reasonableness standard of the Fourth Amendment as enunciated in *Graham* and

25  *Tennessee v. Garner*, 471 U.S. 1, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985).  *Blanford*

26  *v. Sacramento Cnty.*, 406 F.3d 1110, 1115 (9th Cir. 2005); *see also Saucier v. Katz*,

27  533 U.S. 194, 204, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001).  The reasonableness

28  of an officer's actions "must be judged from the perspective of a reasonable officer

1  on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at
2  396.

3      To determine whether defendant Vega violated a constitutional right, the
4  court must carefully balance "'the nature and quality of the intrusion on the
5  individual's Fourth Amendment interests against the countervailing governmental
6  interests at stake.'" *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (quoting
7  *Graham*, 490 U.S. at 396); *see also Deorle*, 272 F.3d at 1279 ("the force which is
8  applied must be balanced against the need for that force").  Such an analysis
9  requires "careful attention to the facts and circumstances in each particular case,
10 including the severity of the crime at issue, whether the suspect poses an immediate
11 threat to the safety of the officers or others, and whether he is actively resisting
12 arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396; *see also*
13 *Garner*, 471 U.S. at 8-9 (whether a seizure is reasonable under the Fourth
14 Amendment is judged by the "totality of the circumstances").  The Supreme Court
15 has emphasized that per se rules do not exist in the context of Fourth Amendment
16 reasonableness; rather, courts must consider the "factbound morass of
17 'reasonableness.'" *Id.* (quoting *Scott*, 550 U.S. at 383).

18      *Graham* is applied first by considering the nature and quality of the alleged
19 intrusion and second by considering the government interests at stake. *Mattos*, 661
20 F.3d at 441.  Setting aside the deemed admissions momentarily and focusing on the
21 other undisputed facts, primarily as shown in the video, the intrusion on plaintiff's
22 liberty was not insubstantial.  The force used appeared sufficient to cause serious
23 injury.  The initial force knocked plaintiff off of his feet and onto the ground.
24 Defendant Vega then hit plaintiff with his baton, multiple times.  When law
25 enforcement picked up the handcuffed plaintiff to move him over to a squad car, a
26 pool of blood remained where plaintiff's face had been against the pavement.

27      But taking the facts in the RFAs as admitted, the alleged intrusion – that is,
28 the level of force applied – is minimal.  By failing to timely respond to the RFAs,

1  plaintiff admitted he sustained no injuries from this incident, and any pain or

2  injuries he experienced derive from incidents unrelated to the September 20, 2011

3  contact with San Bernardino Sheriff's deputies.

4      Moving on to the governmental interests, the court looks at: (1) the severity

5  of the crime at issue; (2) whether the suspect posed an immediate threat to the safety

6  of the officers or to others; and (3) whether the suspect was actively resisting arrest

7  or attempting to evade arrest by flight. *Mattos*, 661 F.3d at 441. These factors are

8  nonexclusive. *Id.* Courts consider the totality of the circumstances and "whatever

9  specific factors may be appropriate in particular case" whether or not those factors

10  are articulated in *Graham*. *Id.* (citations and internal quotation marks omitted).

11  "[T]he most important *Graham* factor is whether the suspect posed an immediate

12  threat to the safety of the officers or others." *Id.* (citing *Smith*, 394 F.3d at 702

13  (internal quotation marks and citation omitted)). A "simple statement by an officer

14  that he fears for his safety or the safety of others is not enough; there must be

15  objective factors to justify such a concern." *Id.* at 441-42 (citation omitted).

16      Analyzing the governmental interests, starting with the severity of the crimes

17  at issue, the court notes that the parties do not dispute that defendant Vega initiated

18  contact with plaintiff because he believed him to be a suspect who may have

19  shoplifted from Kohl's. Ninth Circuit precedent suggests that this is not a severe

20  crime in a *Graham* analysis. *See id.* at 444 (citing *Davis v. City of Las Vegas*, 478

21  F.3d 1048, 1055 (9th Cir. 2007) (noting that trespassing and obstructing a police

22  officer were not severe crimes); *Smith*, 394 F.3d at 702 (concluding that suspect was

23  not "particularly dangerous" and his offense was not "especially egregious" where

24  his wife had "called 911 to report that her husband 'was hitting her and/or was

25  physical with her,' [and] that he had grabbed her breast very hard")).

26      Jumping to the third factor to be considered, there is no dispute that plaintiff

27  ran away and resisted arrest. Although plaintiff contends he ultimately decided to

28  submit to arrest, if so, it does not appear he communicated that intention to

1 | defendant Vega before defendant Vega took him to the ground.  The surveillance
2 | video is inconsistent with plaintiff's contention that he voluntarily went down on his
3 | knees.

4 | The second *Graham* factor – and "the most important single element of the
5 | governmental interests at stake" (*Mattos*, 661 F.3d at 445 (citation and internal
6 | quotation marks omitted)) – is whether plaintiff posed an immediate threat to the
7 | safety of law enforcement or others.  It is undisputed that shortly after the encounter
8 | began, plaintiff was not compliant: he ran.  Again excluding the deemed admissions
9 | from this analysis, the surveillance video shows that at some point plaintiff stopped
10 | running and turned to face defendant Vega as defendant Vega ran towards plaintiff.
11 | Defendant Vega then used force to get plaintiff to the ground and beat plaintiff with
12 | the baton.  Plaintiff asserts that he was unarmed, did not strike any of the officers
13 | during the chase, and when he was on the ground made no attempt to hit or kick the
14 | officers.  If these were all of the facts then, taking them in the light most favorable
15 | to plaintiff as the court must at this stage, it does not appear that plaintiff posed
16 | much of a threat to bystander safety or to the safety of defendant Vega.

17 | The deemed admissions, however, change this analysis.  Plaintiff has
18 | admitted a number of "facts" that suggest that he did pose an immediate threat to the
19 | safety of officers and others.  Specifically, the undisputed facts per the deemed
20 | admissions are that plaintiff: threatened to hit and did hit defendant Vega when
21 | defendant Vega tried to detain plaintiff; failed to comply with defendant Vega's and
22 | Deputy Stone's orders, including their orders that he go to the ground; and
23 | attempted to trick defendant Vega and Deputy Stone into thinking that plaintiff was
24 | carrying a weapon.  These undisputed facts compel the conclusion that the force
25 | applied by defendant Vega was reasonable.  *See Conlon v. U.S.*, 474 F.3d 616, 621
26 | (9th Cir. 2007) ("Unanswered requests for admissions may be relied on as the basis
27 | for granting summary judgment.").

28 | Having found defendant Vega's use of force was reasonable based on the

1  undisputed facts, the court need not consider defendants' qualified immunity

2  argument.  The court thus finds defendant Vega is entitled to summary judgment on

3  his excessive force claims.

4  **C.   Plaintiff Has Abandoned His Claims of Negligence**

5        Plaintiff alleges two causes of action for negligence, the Third and Ninth.[4]

6  Defendants moved for summary judgment on these claims, arguing that a

7  constitutional violation cannot serve as the basis for a negligence cause of action.

8  Plaintiff did not oppose defendants' motion for summary judgment with regard to

9  these counts, and thus appears to have abandoned these claims.  JM at 22-23; *see*

10 *Beed v. Cnty. of Los Angeles,* 2007 WL 1723717, at *4 (C.D. Cal. June 7, 2007).  As

11 such, the court will grant defendants summary judgment on these claims.

12 **D.   The SAC Fails to State a *Monell* Claim Against San Bernardino County,**

13 **     the San Bernardino Sheriff's Department, and Defendant Hoops**

14       The SAC names the County of San Bernardino and the San Bernardino

15 Sheriff's Department as defendants.  Although plaintiff does not specify that he is

16 suing defendant Hoops in his official capacity "the basis of the claims asserted and

17 nature of relief sought imply that this must be so."  *Price v. Akaka*, 928 F.2d 824,

18 828 (9th Cir. 1990) (internal quotation marks omitted) (citing *Central Reserve Life*

19 *Ins. Co. v. Struve*, 852 F.2d 1158, 1161 (9th Cir.1988) (relying on these factors,

20 rather than on caption of complaint, to determine capacity in which defendant is

21 being sued)).  Plaintiff appears to allege that the County's failure to adequately

22 train, supervise, and discipline its officers led to the use of excessive force against

23 him and the attendant violations of his constitutional rights.  SAC at 4, 12-14.

24       The Supreme Court has held that an "official-capacity suit is, in all respects

25 other than name, to be treated as a suit against the entity."  *Kentucky v. Graham*, 473

26 U.S. 159, 166, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985); *see also Brandon v. Holt*,

27

28       [4]   For the court's numbering of plaintiff's causes of action, *see supra* n.1.

1   469 U.S. 464, 471-72, 105 S. Ct. 873, 83 L. Ed. 2d 878 (1985) ("a judgment against
2   a public servant 'in his official capacity' imposes liability on the entity that he
3   represents"); *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) ("A
4   suit against a government officer in his official capacity is equivalent to a suit
5   against the government entity itself." (citation omitted)).  Such a suit "is *not* a suit
6   against the official personally, for the real party in interest is the entity." *Kentucky*,
7   473 U.S. at 166.  Thus, here, plaintiff's suit against defendant Hoops in his official
8   capacity constitutes a suit against the individual's employer.  That employer is San
9   Bernardino County.  Similarly, plaintiff's suit against SBSD is ultimately a suit
10   against San Bernardino County.

11       A local government entity such as San Bernardino County "may not be sued
12   under § 1983 for an injury inflicted solely by its employees or agents." *Monell*, 436
13   U.S. at 694.  Instead, "it is only when execution of a government's policy or custom,
14   whether made by its lawmakers or by those whose edicts or acts may fairly be said
15   to represent official policy, inflicts the injury that the government as an entity is
16   responsible under § 1983." *Id.*  Thus, San Bernardino County may not be held
17   liable for the alleged actions of its employees or other agents unless "the action that
18   is alleged to be unconstitutional implements or executes a policy statement,
19   ordinance, regulation, or decision officially adopted or promulgated by that body's
20   officers," or if the alleged constitutional deprivation was "visited pursuant to a
21   governmental 'custom' even though such a custom has not received formal approval
22   through the body's official decisionmaking channels." *See id.* at 690-91; *accord*
23   *Redman v. Cnty. of San Diego*, 942 F.2d 1435, 1443-44 (9th Cir. 1991).

24       Here, plaintiff generally points to the alleged excessive force employed by
25   defendant Vega as proof that there was a pattern and custom of unconstitutional
26   mistreatment. *See, e.g.,* SAC at 94, 104, 107, 123.  But aside from these assertions,
27   he identifies no policy or custom that led to this.  *See City of Canton v. Harris*, 489
28   U.S. 378, 391, 109 S. Ct. 1197, 1206, 103 L. Ed. 2d 412 (1989) (section 1983

1  liability only attaches if the municipal practice "actually caused" the constitutional
2  violation).  Similarly, plaintiff argues that the video footage shows the deputies
3  present were not fearful of being reprimanded when they did not promptly offer
4  medical aid to plaintiff.  JM at 26.  But even accepting this interpretation of the
5  evidence, it does not come close to showing there was a policy, custom, or practice
6  of providing inadequate medical assistance.

7  Thus, plaintiff has not identified any policy, ordinance, or custom of San
8  Bernardino County or the San Bernardino County Sheriff's Department that was the
9  "moving force" behind the alleged deprivation of his constitutional rights.  *See Bd.*
10 *of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 400, 117 S. Ct. 1382, 137
11 L. Ed. 2d 626 (1997) (no liability may be imposed "on a municipality unless
12 *deliberate* action attributable to the municipality itself is the 'moving force' behind
13 the plaintiff's deprivation of federal rights" (citation omitted)).  Accordingly,
14 defendants are entitled to summary judgment on plaintiff's *Monell* claims against
15 San Bernardino County, the San Bernardino County Sheriff's Department, and
16 defendant Hoops.
17 //
18 //
19 //

# VI.

## **CONCLUSION**

IT IS THEREFORE ORDERED: (1) plaintiff's motion to withdraw his deemed admissions is denied; (2) defendants' motion for summary judgment is granted; and (3) judgment shall be entered dismissing this action with prejudice.

In addition, in light of the findings made herein, plaintiff's counsel is ORDERED to send a copy of this Memorandum Opinion and Order to plaintiff, and to file, on or before July 28, 2014, proof of such service on his client.  Finally, the court advises the parties and counsel that it will be forwarding a copy of this decision to the State Bar of California.

DATED:  July 18, 2014

_____
SHERI PYM
United States Magistrate Judge